1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FASTEK, LLC,<br><br>                    Plaintiff,<br><br>    vs.<br><br>STECO, a division of Blue Tee Corporation, et al.,<br><br>                  Defendants. | CASE NO. 10 CV 0972 MMA (CAB)<br><br>**ORDER CONSTRUING DISPUTED CLAIM TERMS OF UNITED STATES PATENT NOS. 7,172,382; 7,588,406; and 7,699,575** |

Pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), the Court conducted a hearing on March 25, 2011 regarding the construction of disputed claim terms in United States Patent Nos. 7,172,382; 7,588,406; and 7,699,575.  Attorneys Valerie Ho, Franklin Ubell, and Kamran Salour appeared on behalf of Plaintiff Fastek, LLC.  Attorneys Mark Brown and Stephen Swinton appeared on behalf of Defendants Steco and Blue Tee Corp.  Attorney Dustin Dodgin appeared telephonically on behalf of Defendant Sierra International Machinery, LLC.  Prior to the hearing, the Court provided the parties with its tentative construction of each disputed claim term and instructed the parties to meet and confer.  (*See* attached Court's Exhibit A.)  After review, Plaintiff agreed with the Court's tentative constructions, while Defendants asserted the disputed terms merited further argument before the Court.  Upon careful consideration of the papers and the oral arguments of counsel, the Court issues the following order construing the disputed claim terms of the patents at issue in this case.

///

## BACKGROUND

On May 5, 2010, Plaintiff Fastek filed a complaint for infringement of two patents—U.S. Patent Nos. 7,588,406 ("'406 Patent) and 7,699,575 ("'575 Patent"). [Doc. No. 1.] On November 30, 2010, the Court granted Plaintiff's motion for leave to file a first amended complaint to add a third patent—U.S. Patent No. 7,172,382 ("'382 Patent"). [Doc. Nos. 46, 47.] Defendants have filed counterclaims against Plaintiff asserting the patents are invalid and requesting a declaration of non-infringement. [Doc. Nos. 50, 52.] Generally, all three patents describe assemblies that teach a method for loading bulk material into a transport container quickly and efficiently. [*See* Doc. No. 47.]

## DISCUSSION

**I.    LEGAL STANDARD**

The construction of patent claim terms is a matter of law for the court. *Markman*, 517 U.S. at 372. "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys*., 381 F.3d 1111, 1115 (Fed. Cir. 2004). As a general rule, the claim language carries its ordinary and customary meaning. *Toro Co. v. White Consol. Indus., Inc*., 199 F.3d 1295, 1299 (Fed. Cir. 1999). The ordinary meaning of a term cannot, however, be construed in a vacuum; rather, a court "must look at the ordinary meaning in the context of the written description and the prosecution history." *Medrad, Inc. v. MRI Devices Corp*., 401 F.3d 1313, 1319 (Fed. Cir. 2005). To ascertain the meaning of a claim term, the court refers to "those sources available to the public that show what a person of ordinary skill in the art would have understood the disputed claim language to mean." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). The court does so to "determine whether the inventor used any terms in a manner inconsistent with their ordinary meaning." *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996). The sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (citing *Innova*, 381 F.3d at 1116).

1    The court begins with the language of the claims. *PSC Computer Prods., Inc. v. Foxconn*
2    *Int'l*, 355 F.3d 1353, 1359 (Fed. Cir. 2004). When considering the claim language, "the context in
3    which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314.
4    The court may also consider the other claims of the patent, both asserted and non-asserted. *Id.*
5    For example, as claim terms are normally used consistently throughout a patent, the usage of a
6    term in one claim may illuminate the meaning of the same term in other claims. *Id.* The court
7    may also consider differences between claims to guide in understanding the meaning of particular
8    claim terms. *Id.*

9        As the claims do not stand alone, they "must be read in view of the specification, of which
10   they are a part." *Phillips*, 415 F.3d at 1315 (citation omitted). "The construction that stays true to
11   the claim language and most naturally aligns with the patent's description of the invention will be,
12   in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d
13   1243, 1250 (Fed. Cir. 1998). When the specification reveals a special definition given to a claim
14   term by the patentee that differs from the meaning it would otherwise possess, the inventor's
15   lexicography governs. *Phillips*, 415 F.3d at 1316 (citing *CCS Fitness, Inc. v. Brunswick Corp.*,
16   288 F.3d 1359, 1366 (Fed. Cir. 2002)). The specification may reveal an intentional disclaimer, or
17   disavowal, of claim scope by the inventor. *Id.* (citing *SciMed Life Sys., Inc. v. Advanced*
18   *Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001)).

19       The Federal Circuit also has affirmed the importance of the prosecution history. *Phillips*,
20   415 F.3d at 1317. The prosecution history represents an ongoing negotiation between the PTO
21   and the applicant. *Id.* The prosecution history, like the specification, "provides evidence of how
22   the PTO and the inventor understood the patent." *Id.* (citing *Lemelson v. Gen. Mills, Inc.*, 968
23   F.2d 1202, 1206 (Fed. Cir. 1992)). However, it is subject to inherent ambiguity because is
24   represents the negotiation, rather than the final product of the negotiation, and is thus less useful
25   than the specification. *Id.*

26       Extrinsic evidence "can shed useful light on the relevant art," but the Federal Circuit
27   considers it "less significant than the intrinsic record in determining the legally operative meaning
28   of claim language." *Id.* (citing *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir.

1  2004)).  "Extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable

2  interpretation of patent claim scope unless considered in the context of the intrinsic evidence."  *Id.*

3  at 1319.  The Federal Circuit has held that it remains within the court's discretion to admit

4  extrinsic evidence, provided the court keeps in mind the flaws inherent in extrinsic evidence.  *Id.*

5      In sum, this Court first must interpret the claim terms in light of the intrinsic evidence—

6  specification, claims, and prosecution history—and then exercise discretion in deciding whether to

7  consider extrinsic evidence submitted by the parties.

8  **II.    CONSTRUCTION OF DISPUTED CLAIM TERMS**

9      With the above principles in mind, the Court turns to the construction of the disputed claim

10  terms.  The parties identified two terms for construction by the Court: (1) "engage" (and its

11  grammatical variations); and (2) "lock."  Each party proposed a single definition for each of the

12  two terms to be applied across the three patents at issue.  Accordingly, to avoid repetition, the

13  Court will not parse each claim in each patent where the disputed terms appear.  Rather, the Court

14  will utilize exemplary claim language from a single patent that is materially identical to the

15  relevant claims in the remaining two patents; any substantive differences among the patents that

16  affect the Court's analysis are noted.

17      **(A)    Engage, Engaged, Engaging**

18      The first term disputed by the parties is "engage."  The following phrases utilizing the term

19  "engage" appear in the three patents at issue:

20

21   •   "wherein the barrier assembly is configured to **engage** the stationary support
         structure"

22   •   "**engaging** the barrier assembly with the stationary support structure"

23   •   "**engaged** with the stationary support structure"

24   •   "the step of **engaging**"

25   •   "**engaging** the movable wall of the barrier assembly"

26  Both parties offer proposed constructions for the term "engage."  Plaintiff proposes "engage"

27  means "any type of mechanical engagement which establishes contact, interlocking, or meshing

28  between respective elements, whether indirectly, through intermediate component(s), or directly."

1   [Doc. No. 54.]  Defendants propose that "engage" means "direct physical contact between

2   mechanical components."  [*Id*.][1]

3          The Court tentatively found that neither party offered an appropriate proposed construction

4   of the term, as both constructions imported additional limitations not supported by the intrinsic

5   evidence.  Accordingly, the Court tentatively found that **"engage"** (and its grammatical variations)

6   means **"to connect directly, or indirectly through intermediate component(s)."**  In so ruling,

7   the Court agreed with Plaintiff's position that the plain language of the patents, the prosecution

8   history, and the plain meaning of "engage" do not support Defendants' narrow construction which

9   requires direct, physical contact between mechanical components.  Nothing in the record indicates

10  the inventor intended "engage" to have a special or limited meaning as used in the patents.  Rather,

11  the intrinsic evidence supports a construction that reflects the broader plain meaning of the term

12  "engage."[2]  Plaintiff stipulates to the Court's tentative construction.

13         Defendants argue, however, the inventor's use of "disengage" precludes the Court's

14  tentative construction.  According to Defendants, if the Court's construction is adopted, and

15  indirect components could be utilized to engage the barrier assembly with the support structure,

16  the barrier would always remain engaged with the support structure because the two elements will

17  always be indirectly connected through intermediate components.  If "engage" encompasses

18  indirect contact, Defendants contend that to "disengage . . . the barrier assembly would have to

19  *levitate above* the stationary support structure and the load bin."  [Doc. No. 74, p.2 (emphasis in

20  original).]  The Court disagrees.  The term "engage" is not read in isolation, rather, it is interpreted

21  within the context of the claim(s) in which it appears.  *See Toro Co.*, 199 F.3d at 1299 ("in judicial

22  'claim construction' the court must achieve the same understanding of the patent, as a document

23  whose meaning and scope have legal consequences, as would a person experienced in the

24

25  _____

26  [1] Defendant Sierra International Machinery, LLC joins Defendants Steco and Blue Tee Corp.'s
    claim construction briefs.  [Doc. Nos. 70, 76.]

27  [2] The Court notes the dictionary definition for "engage" provided by Defendants—to interlock
28  with : MESH ; to cause (mechanical parts) to mesh—does not indicate direct, physical contact
    between mechanical components.  [*See* Doc. No. 69 at p.22; Doc. No. 69-7 at
    BTC001489.]

technology of the invention"); *Renishaw PLC*, 158 F.3d at 1251 (the meaning of a claim is to be understood in context).

For example, independent Claim 11 of the '382 Patent reads in relevant part: "engaging the barrier assembly with the stationary support structure *after* the drive mechanism has been operated to move the load bin into the transport container, to lock the barrier assembly adjacent to the open end of the container . . . ." (emphasis added).[3]  The parties do not dispute that when the entire phrase is considered, it is clear the inventor used the term "engage" to describe a specific action at a specific point in time during the loading process.  Namely, the barrier assembly engages the support structure *after* the loan bin has been moved into the transport container.  The Court finds the inventor's use of the term "disengage" in dependent Claim 12 to signal the termination of this step—when the barrier assembly is disengaged from the support structure and slides to a retracted position—is consistent with the inventor's use of the term "engage."

Similarly, independent Claim 1 of the '382 Patent states in relevant part: "the step of engaging includes *engaging the barrier assembly* with the stationary support structure, *to lock* the barrier assembly adjacent to the open end of the transport container." (emphasis added).  Thus, the term "engage" again signals a specific action at a specific point in time for a specific purpose—the barrier assembly connects to the stationary support structure so that it is locked adjacent to the open end of the container.  Stated another way, the barrier assembly connects to the stationary support structure in a specific manner for a specified duration to accomplish this step of the loading process.  The limited nature of the claimed connection between the barrier assembly and stationary support structure does not speak to any potential connection between the two structures at any other point in time.  Therefore, Defendants' argument that for the two components to later become "disengaged," as described in dependent Claim 2 of the '382 Patent, they must have *no* contact between them is unpersuasive.[4]  In sum, the intrinsic evidence does not indicate the inventor intended the word "engage" to have a special limited meaning to describe only direct

---

[3]  Similar "engage" and "disengage" phrases appear in the '406 Patent and '575 Patent.

[4]  Claim 2 of the '382 Patent states: "disengaging the barrier assembly from the support structure; and sliding the barrier assembly to a retracted position, disposed within the load bin."

1    physical contact between mechanical components, and the patents' references to "disengagement"

2    in subsequent dependent claim limitations does not require a narrower construction.

3          Defendants also argue the prosecution history supports their construction where "engage"

4    requires *direct* contact between the barrier assembly and stationary support structure.  The parties

5    do not dispute that during prosecution of the '382 Patent, the examiner rejected the inventor's

6    proposed claim language which provided for a "locking assembly."  The examiner indicated the

7    application did not adequately disclose the locking assembly structure that purportedly locked the

8    barrier assembly adjacent to the open end of the container while the load bin is being retracted.

9    [*See* FAS000856-59, Exh. G to Doc. No. 69-2 (the language "does not reasonably provide

10   enablement for a locking assembly that locks a barrier assembly to the support structure";

11   "applicant makes no reference to the fact that there [sic] barrier locking mechanism are well

12   known in the art".]  The examiner concluded the "locking assembly" description was deficient

13   because one skilled in the art would not be able to implement the specification without more

14   information.

15         In response, after several failed attempts to amend the language, the inventor cancelled the

16   "locking assembly" element altogether and replaced it with the now disputed phrasing—"wherein

17   the barrier assembly is configured to **engage** the stationary support structure when the drive

18   mechanism has moved the load bin into the transport container."  [Exh. G to Doc. No. 69-2 at

19   FAS000688, FAS000694-696 (emphasis added).]  This language, coupled with two expert

20   declarations indicating that it would be immediately clear to one skilled in the art how to

21   implement the barrier assembly identified by the inventor, proved successful and the patent was

22   allowed.  Defendants argue the inventor's decision to delete the "locking assembly" language

23   reflects his acquiescence to narrower claim limitations, which require direct physical contact

24   between the barrier assembly and stationary support structure.  Again, the Court disagrees.

25         The Court has thoroughly reviewed the prosecution histories for the three patents as issue,

26   and concludes they do not indicate the scope of the claims is limited to direct contact between the

27   barrier assembly and the stationary support structure.  Although the examiner rejected the "locking

28   assembly" language several times during the prosecution of the '382 Patent, the examiner's

1   remarks do not suggest that in the absence of the "locking assembly" the barrier assembly and

2   stationary support structure were in direct contact.  Rather, the examiner found what the inventor

3   described as a locking assembly to be inadequately specified, such that one reasonably skilled in

4   the art could not implement the locking assembly without undue experimentation.  The examiner's

5   rejection does not require the conclusion that all methods of indirectly connecting, contacting or

6   otherwise engaging the barrier assembly and stationary support structure are also precluded.

7   Instead, it appears the inventor attempted to patent a locking assembly—a specific indirect method

8   for engaging the barrier and the support structure—but was ultimately unsuccessful because he did

9   not adequately explain how to implement the specified locking assembly element.  Accordingly,

10  the inventor eventually opted to delete his reference to a specific locking assembly, and replaced

11  the rejected language with "engage."

12          Without more, the Court concludes the prosecution history does not support a narrower

13  construction of the term engage which requires direct contact between the barrier assembly and the

14  stationary support structure.  Indeed, the expert declaration of Lemna Hunter submitted to the

15  examiner identifies several possible embodiments of the technology, none of which indicate direct

16  physical contact between the structures is required, or even preferred.  [*See* Exh. G to Doc. No. 69-

17  2 at FAS000850-52.]  In the absence of "contravening evidence from the specification or

18  prosecution history, plain and unambiguous claim language controls the construction analysis."

19  *DSW, Inc. v. Shoe Pavilions, Inc.*, 537 F.3d 1342 (Fed. Cir. 2008) (citation omitted).  Here, on its

20  face, the patent makes clear the disputed term "engage" means that the barrier assembly and the

21  stationary support structure connect to lock the barrier assembly in a particular position at a

22  specific point in time.  Defendants have not demonstrated the intrinsic evidence limits this

23  connection to direct physical contact between the mechanical parts.  Nothing in the record

24  reasonably precludes an embodiment wherein the components come into contact or engage one

25  another through intermediate means, and it is generally error to adopt a claim construction that

26  would exclude one of the inventor's preferred embodiments.  *See MBO Labs., Inc. v. Becton,*

27  *Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) ("[A] claim interpretation that excludes a

28  preferred embodiment from the scope of the claim is rarely, if ever, correct.") (citing *On-Line*

1    *Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004)).

2    Finally, given the unambiguous intrinsic evidence, the finds extrinsic evidence unnecessary to

3    properly construe the disputed term.  Accordingly, the Court **AFFIRMS** its tentative construction

4    that **"engage"** means **"to connect directly, or indirectly through intermediate component(s)."**

5              **(B)       Lock**

6              The second term disputed by the parties is "lock."  The following phrases utilizing the term

7    "lock" appear in the patents at issue:

8              •       "**lock** the barrier assembly"

9              •       "**lock** the movable wall in a fixed position"

10   Both parties offer proposed constructions for the term "lock."  Plaintiff proposes "lock" means "to

11   position, hold, or stop temporarily."  [Doc. No. 54.]  Defendants propose that "lock" means to

12   "physically restrain movement."  [*Id.*]

13             The Court tentatively declined to accept either party's proposed construction, and

14   tentatively found that **"lock"** means to **"stop and hold fast temporarily."**  Plaintiff stipulates to

15   the tentative construction.  Defendants however dispute the Court's tentative construction, arguing

16   that the word "temporarily" is unnecessary and should be removed.  Specifically, Defendants

17   assert the disputed claims all include temporal limitations that make clear the barrier assembly is

18   locked in a certain position for a specific, limited amount of time.  Thus, including "temporarily"

19   in the Court's construction is redundant and superfluous.  Defendants direct the Court to a recent

20   opinion issued by the Federal Circuit, *American Piledriving Equip., Inc. v. Geoquip, Inc.*, 2011

21   U.S. App. LEXIS 5663 (Fed. Cir.), wherein the Court of Appeals reiterated the longstanding

22   construction principle that, "the role of a district court in construing claims is not to redefine claim

23   recitations or to read limitations into the claims to obviate factual questions of infringement and

24   invalidity but rather to give meaning to the limitations actually contained in the claims, informed

25   by the written description, the prosecution history if in evidence, and any relevant extrinsic

26   evidence."  (citing *Phillips*, 415 F.3d at 1314).

27             The Court has reviewed the relevant claim limitations and finds that its tentative use of the

28   term "temporarily" is appropriate.  Defendants are correct that certain claims in the patents at issue

1   provide relatively clear temporal limitations in the surrounding language.  For example, Claim 1 of

2   the '382 Patent states in relevant part:

3           wherein the barrier assembly is configured to engage the stationary
                support structure **when** the drive mechanism has moved the load
4               bin into the transport container, to **lock** the barrier assembly
                adjacent to the open end of the container, such that **when** the drive
5               mechanism thereafter retracts the load bin from the container, the
                wall of the barrier assembly retains the unpalletized load within the
6               container.

7   (emphasis added).  From this language, the reader can reasonably infer that the barrier assembly is

8   locked adjacent to the open end of the container after the loan bin has been moved inside the

9   transport container, until the load bin is retracted and leaves the unpalletized load inside; the

10  barrier assembly is therefore only in the locked position temporarily.

11          In other claims, however, the temporal limitation is not readily apparent.  For example,

12  Claims 1 and 6 of the '406 Patent both read, in relevant part:

13          the step of engaging includes engaging the barrier assembly with the
                stationary support structure, to **lock** the barrier assembly adjacent
14              to the open end of the transport container; and

15          the step of engaging further includes operating the drive mechanism so
                as to retract the load bin from the transport container, **while** the
16              barrier assembly remains engaged with the stationary support
                structure, such that the unpalletized load remains within the
17              transport container.

18  (emphasis added).  Here, the claim language does not provide a clear indication that the barrier

19  assembly remains in the locked position temporarily.  Unlike Claim 1 in the '382 Patent, here, the

20  disputed term "lock" appears in its own paragraph that does not include a temporal limitation.

21  Instead, the reader must infer the duration of the barrier assembly's locked position from the

22  surrounding paragraphs in the claims.  Further, Plaintiff's argument that the step wherein the term

23  "lock" appears is separate and distinct from the following step that provides a temporal limitation,

24  is well-taken.  On the face of the patent, the inventor intentionally separated the phrases in Claims

25  1 and 6 to describe the distinct steps in the loading process.  Although the paragraphs of a given

26  claim limitation are necessarily read in connection with and in reference to one another, the Court

27  finds that the connection between the inventor's use of the term "lock" and the surrounding

28

1    temporal language is sufficiently disconnected to warrant the Court's tentative construction, which

2    supplies the intended temporal limitation.  *See, Phillips*, 415 F.3d at 1314-15.

3        Importantly, Defendants do not dispute that the barrier assembly is locked in place

4    temporarily.  Rather, Defendants argue the Court's inclusion of the term "temporarily" in its

5    tentative construction is unnecessary because the temporariness of the "locking step" is apparent in

6    the surrounding claim language.  Having considered the parties' submissions and oral arguments,

7    the Court finds including "temporarily" in its tentative construction of "lock" is appropriate.  The

8    role of the Court in construing claims is to "give meaning to the limitations actually contained in

9    the claims."  *American Piledriving Equip.*, 2011 U.S. App. LEXIS 5663 at *10.  Here, the Court's

10   inclusion of the word "temporarily" makes clear what is otherwise impliedly present in the

11   surrounding claim language, and is therefore  consistent with the Court's role during claims

12   construction.  The Court's construction does not improperly import limitations into the claim

13   language, as the parties agree the "locking step" occurs for a limited duration at a certain place and

14   time.  The Court's tentative construction accurately describes what takes place during the relevant

15   period of the loading process; specifically, after the barrier assembly engages the support structure,

16   it stops temporarily, adjacent to the open end of the container and holds fast while the bin is

17   retracted.

18       The Court acknowledges that the temporal limitation in some claims is more clear than it is

19   in others, but finds that its use of the term "temporarily" to expressly define what is implied in the

20   claim limitations can consistently be applied across the patents at issue, and the Court's tentative

21   construction does not render the existing claim language superfluous when read directly into the

22   patents.  Accordingly, the Court **AFFIRMS** its tentative construction that **"lock"** means to **"stop**

23   **and hold fast temporarily."**

24   **III.    DEFENDANTS' EVIDENTIARY OBJECTIONS**

25       On March 21, 2011, Defendants filed evidentiary objections to the Declaration of Dr. John

26   D. Pratt submitted in support of Plaintiff's responsive claim construction brief [Doc. No. 75-5].

27   [Doc. No. 104.]  The Court declines to rule on the merits of Defendants' objections in connection

28   with its claim construction order, as the Court did not rely on Dr. Pratt's declaration to reach its

constructions of the disputed terms.  Accordingly, Defendants' objections are **OVERRULED**
without prejudice as **MOOT**.  To the extent the Court finds Dr. Pratt's declaration relevant to its
ruling on the parties' pending motions for summary judgment, the Court will consider the merits
of Defendants' objections at that time.

**IV.    PLAINTIFF'S MOTION TO STRIKE**

In an order dated March 9, 2011, Magistrate Judge Bencivengo permitted Defendants to
submit a supplemental claim construction brief, not to exceed five pages, "regarding the operation
of the Fastek Loader based on [Defendants'] inspection of the device . . . to challenge Dr. Pratt's
conclusions."  [Doc. No. 94.]  Defendants filed their supplement brief on March 21, 2011.  [Doc.
Nos. 103 (redacted), 114 (under seal).]  On March 23, 2011, Plaintiff moved *ex parte* to strike
Defendants' supplemental brief on the ground that it exceeds the scope of Magistrate Judge
Bencivengo's March 9 Order.  [Doc. No. 107.]  Defendants oppose Plaintiff's motion to strike.
[Doc. No. 112.]  The Court has considered the parties' submissions and **DENIES** Plaintiff's
motion to strike as **MOOT**.

In their supplemental brief, Defendants correctly note that purported commercial
embodiments of the patents at issue are not relevant to the Court's claim construction.  [Doc. No.
103, p.1 citing *Int'l Visual Corp. v. Crown Metal Co.*, 991 F.2d 768, 771-72 (Fed. Cir. 1993) and
*SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1339 (Fed. Cir. 2005).]  Plaintiff does
not challenge this general proposition, but rather accuses Defendants of exceeding the scope of the
sur-reply permitted by Judge Bencivengo.  Irrespective of whether Defendants' brief exceeds the
scope of additional briefing contemplated by Judge Bencivengo, the Court does not find the
parties' arguments regarding the structure of the Fastek CLS Loader relevant to its construction of
the disputed terms in the patents at issue.  Accordingly, because the Court did not consider the
parties' commercial embodiment arguments in reaching its constructions of the disputed terms, the
Court finds Plaintiff's motion to strike moot.

/ / /

<u>CONCLUSION</u>

For the reasons stated above, the disputed terms of United States Patent Nos. 7,172,382; 7,588,406; and 7,699,575 are construed as set forth in this Order. **IT IS FURTHER ORDERED** that: (i) Defendants' objections to Dr. Pratt's declaration are **OVERRULED** without prejudice as **MOOT** [Doc. No. 104]; and (ii) Plaintiff's *ex parte* motion to strike Defendants' supplemental claim construction brief is **DENIED** as **MOOT** [Doc. No. 107].

**IT IS SO ORDERED.**

DATED: April 6, 2011

_Michael M. Anello_
Hon. Michael M. Anello
United States District Judge

10cv972

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# COURT'S EXHIBIT A

## TENTATIVE CLAIM CONSTRUCTION WORKSHEET (prepared by the Court)[1]

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| '382 Patent, Claim 1:<br><br>A loading **assembly** for use with a transport container having an open end, comprising:<br><br>a **load bin** sized to be inserted into a transport container through an open end thereof, the **load bin** including a floor, two side **wall**s, and a **movable front wall**;<br><br>a **barrier assembly** including a **wall** disposed within the **load bin**, spaced from the **movable front wall** thereof,<br><br>wherein the **load bin** and the **barrier assembly** cooperate to define a volume configured to hold an **unpalletized load** of sufficient size to fill the transport | "**assembly**" -- a collection of parts so assembled as to form a complete machine, structure, or unit of a machine.<br><br>"**barrier/wall**" -- a structure which hinders or restricts the passage of material.<br><br>"**unpalletized load**" -- a load which is not stored on portable platforms.<br><br>"**movable front wall**" -- a structure(s) of the load bin that opens to allow the load to exit the load | N/A | N/A | Court adopts the parties' agreed proposed constructions. |

---

[1]  The parties are advised the Court made some formatting changes to the Joint Claim Construction Worksheet prepared by the parties to maintain readability after the Court's constructions were added; no substantive information provided by the parties has been altered.  The parties are further advised that despite the bolding of entire phrases to keep the formatting consistent with that created by the parties, the Court has only construed the limited terms "engage" (and its grammatical variations) and "lock."

|  | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| container to capacity in a single operation, and wherein the **load bin** and the **barrier assembly** further cooperate to define a top opening for receiving an **unpalletized load**;<br><br>a **stationary support structure** including a base support disposed below the **load bin** and a pair of upstanding side supports disposed on opposing sides of the **load bin**; and<br><br>a drive mechanism coupled to the **load bin** to move the **load bin** into the transport container through the open end thereof and to retract the **load bin** from the container; | bin.<br><br>"**load bin**" -- a box, frame, crib, or enclosed place used for storing a load.<br><br>"**support structure /support**" -- a structure(s) that holds up or serves as a foundation or prop for another structure.<br><br>"**stationary**" -- non-moving.<br><br>"**adjacent**" -- close to or nearby. |  |  |  |
| **wherein the barrier assembly is configured to engage the stationary support structure** when the drive mechanism has moved the **load bin** into the transport container, to **lock the barrier** assembly **adjacent** to the open end of the container, such that when the drive |  | "**engage** -- any type of mechanical engagement which establishes contact, interlocking, or meshing, between respective elements, whether indirectly, through intermediate component(s), or directly. | "**engage**" -- direct physical contact between mechanical components. | "**engage**" means "to connect directly, or indirectly through intermediate component(s)."<br><br>- This construction is supported by the patent itself (i.e. col. 2, ln. 26-31; col. 2, ln. 56-61; col. |

LA 129,250,485v6 12-28-10

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| mechanism thereafter retracts the **load bin** from the container, the **wall** of the **barrier assembly** retains the **unpalletized load** within the container. | | | | 5, ln. 29-32)<br><br>- The patent language does not preclude an embodiment wherein the barrier assembly and support structure will not be in direct physical contact.<br><br>- Defendants' additional narrowing terms "direct" and "physical" are not supported by the IE. |
| | | **"wherein the barrier assembly is configured to engage the stationary support structure" --** wherein the barrier assembly has or includes some component(s) or structural feature which participates or cooperates in establishing contact, interlocking, or meshing either indirectly, through | **"wherein the barrier assembly is configured to engage the stationary support structure" --** | See above. |

3

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | intermediate component(s), or directly, with the stationary support structure. | | |
| | | **"lock"** -- to position, hold or stop temporarily. | **"lock"** -- to physically restrain movement. | **"lock"** means to "stop and hold fast temporarily."<br><br>- This construction is supported by the patent itself (i.e. col. 2, ln. 27-31, ln. 56-61; col. 3, ln. 10-13; col. 4, ln. 47-49.)<br><br>- IE cited by Defendants does not support their narrow construction; Defendants' proposed construction cannot reasonably be read into the claim language. |

4

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| | | "**lock the barrier**" -- to position, hold, or stop temporarily the barrier. | "**lock the barrier**" -- to physically restrain the barrier. | See above. |
| '382 Patent, Claim 2:<br><br>A loading assembly as defined in claim 1, wherein the barrier assembly can be positioned in the load bin, prior to loading, to conform the internal volume of the load bin to prescribed container sizes. | | See above, '382 Patent, Claim 1. | See above, '382 Patent, Claim 1. | See above, '382 Patent, Claim 1. |
| '382 Patent, Claim 3:<br><br>A loading assembly as defined in claim 1, wherein the load bin is configured to hold a load in excess of 22,000 pounds. | | See above, '382 Patent, Claim 1. | See above, '382 Patent, Claim 1. | See above, '382 Patent, Claim 1. |
| '382 Patent, Claim 6:<br><br>A loading assembly as defined in claim 3, wherein the barrier assembly is configured to be positioned to conform the | | See above, '382 Patent, Claim 1. | See above, '382 Patent, Claim 1. | See above, '382 Patent, Claim 1. |

5

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| internal volume of the load bin to prescribed container sizes. | | | | |
| **'382 Patent, Claim 8:**<br><br>A loading assembly as defined in claim 1, wherein the base support is configured for lateral and vertical adjustments to aid in aligning the load bin with the transport container. | | See above, '382 Patent, Claim 1. | See above, '382 Patent, Claim 1. | See above, '382 Patent, Claim 1. |
| **'382 Patent, Claim 11:**<br><br>A method of loading a transport container, comprising:<br><br>positioning a transport container and a loading assembly relative to one another such that the loading assembly is adjacent to an open end of the container, the loading assembly including<br><br>a load bin including a floor, two side walls, and a movable front wall, | | **"engage/engaging/ engaged" --** see above, '382 Patent, Claim 1.<br><br>**"lock the barrier"** -- see above, '382 Patent, Claim 1. | **"engage/engaging/ engaged" --** see above, '382 Patent, Claim 1.<br><br>**"lock the barrier"** -- see above, '382 Patent, Claim 1. | See below, p.8-11.<br><br>See below, p.8-11. |

6

|  | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| a barrier assembly having a wall disposed within the load bin, spaced from the movable front wall,<br><br>wherein the load bin and the barrier assembly cooperate to define a volume configured to hold an unpalletized load of sufficient size to substantially fill the transport container to capacity in a single operation, and wherein the load bin and the barrier assembly further cooperate to define a top opening for receiving an unpalletized load,<br><br>a stationary support structure for supporting the load bin and the barrier assembly while in a position adjacent to the open end of the transport container, and<br><br>a drive mechanism configured to move the load bin into the transport container through the open end thereof;<br>loading the load bin with an |  |  |  |  |

7

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| unpalletized load through the top opening;<br><br>operating the drive mechanism so as to move the load bin into the transport container through the open end thereof until the unpalletized load is fully disposed within the container, while the container is maintained generally stationary;<br><br>**engaging the barrier assembly with the stationary support structure** after the drive mechanism has been operated to move the load bin into the transport container, to **lock the barrier** assembly adjacent to the open end of the container; and | | **"engaging the barrier assembly with the stationary support structure"** **--** establishing contact, interlocking, or meshing between structure or component(s) of the barrier assembly and structure or component(s) attached to the stationary support structure. | **"engaging the barrier assembly with the stationary support structure"** **--** directly physically contacting the barrier assembly with the stationary support structure. | **"engaging the barrier assembly with the stationary support structure"** means "causing the barrier assembly and the stationary support structure to connect directly, or indirectly through intermediate component(s)." |

8

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| operating the drive mechanism so as to retract the load bin from the transport container, while the barrier assembly remains **engaged with the stationary support structure**, such that the load remains within the container. | | **"engaged with the stationary support structure" --** in contact, interlocked, or meshed with structure or component(s) attached to the stationary support structure. | **"engaged with the stationary support structure" --** direct physical contact with the stationary support structure. | **"engaged with the stationary support structure"** means "connected directly, or indirectly through intermediate component(s)." |

9

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **'382 Patent, Claim 16:**<br><br>A loading assembly for use with a transport container having an open end, comprising:<br><br>a load bin sized to be inserted into a transport container through an open end thereof, the load bin including a floor, two side walls, and a movable front wall;<br><br>a barrier assembly including a wall disposed within the load bin that conforms to the internal dimensions of the load bin, and further including a brace coupled to the wall;<br><br>wherein the load bin and the barrier assembly cooperate to define a volume configured to hold an unpalletized load of sufficient size to fill the transport container to capacity in a single operation, and wherein the load bin and the barrier assembly further cooperate to define a top opening for receiving an unpalletized load; | | | | |

10

|  | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| a stationary support structure disposed about the load bin; and<br><br>a drive mechanism coupled to the load bin to move the load bin into the container through the open end thereof and to retract the load bin from the container;<br><br>**wherein the barrier assembly is configured to engage the stationary support structure** when the drive mechanism has moved the load bin into the transport container, to **lock the barrier** assembly in place adjacent to the open end of the container during retraction of, such that when the drive mechanism thereafter retracts the load bin from the container, the barrier assembly retains the unpalletized load within the container. |  | **"engage" --** see above, '382 Patent, Claim 1.<br><br>**"wherein the barrier assembly is configured to engage the stationary support structure"--** see above, '382 Patent, Claim 1.<br><br>**"lock the barrier"--** see above, '382 Patent, Claim 1. | **"engage" --** see above, '382 Patent, Claim 1.<br><br>**"wherein the barrier assembly is configured to engage the stationary support structure"--** see above, '382 Patent, Claim 1.<br><br>**"lock the barrier"--** see above, '382 Patent, Claim 1. | **"engage" --** see above, '382 Patent, Claim 1.<br><br>**"wherein the barrier assembly is configured to engage the stationary support structure"--** see above, '382 Patent, Claim 1.<br><br>**"lock the barrier"--** see above, '382 Patent, Claim 1. |

11

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **'406 Patent, Claim 1:**<br><br>A method of loading a transport container, comprising:<br><br>positioning a transport container having a predetermined maximum loading capacity and a loading assembly wherein the container and the loading assembly are movable relative to one another such that the loading assembly is disposed adjacent to an open end of the container, the loading assembly including:<br><br>a load bin including a non-telescoping floor and two side walls,<br><br>a barrier assembly having a horizontally movable wall disposed within the load bin,<br><br>a stationary support structure supporting the load bin and the barrier assembly, the support structure comprising frame members fixed relative to a | "**non-telescoping floor**" -- the floor is not made of parts which slide one within the other. | N/A | N/A | Court adopts the parties' agreed proposed construction. |

12

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| ground support surface, wherein the barrier assembly is selectively positionable along the load bin to define a load bin maximum capacity, and wherein the load bin and the barrier assembly further cooperate to define a top opening for receiving an unpalletized load; | | "**the step of engaging**" -- the step of establishing contact, interlocking, or meshing, between respective elements, either indirectly, through intermediate component(s), or directly. | "**the step of engaging**" - see above. | "**the step of engaging**" – see '382 Patent, Claims 1 and 11 above. |
| defining the predetermined maximum loading capacity by positioning the barrier assembly along the load bin, wherein the step of defining the predetermined maximum loading capacity further comprises positioning the barrier assembly relative to and within the load bin therealong to a volume configured to hold an unpalletized load of sufficient size to substantially fill the transport container to the predetermined maximum loading capacity in a single operation; | | "**engaging the barrier assembly with the stationary support structure**" -- see above, '382 Patent, Claim 1.<br><br>"**engage/engaging/ engaged**"-- see above, '382 Patent, Claim 11.<br><br>"**lock the barrier**"-- see above, '382 Patent, Claim 1. | "**engaging the barrier assembly with the stationary support structure**" -- see above, '382 Patent, Claim 11.<br><br>"**engage/engaging/ engaged**"-- see above, '382 Patent, Claim 11.<br><br>"**lock the barrier**"-- see above, '382 Patent, Claim 1. | "**engaging the barrier assembly with the stationary support structure**" -- see above, '382 Patent, Claim 11.<br><br>"**engage/engaging/ engaged**"-- see above, '382 Patent Claims 1, 11.<br><br>"**lock the barrier**"-- see above, '382 Patent, Claim 1. |

13

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| loading the load bin with an unpalletized load through the top opening and to the predetermined maximum loading capacity defined by the barrier assembly and the load bin; | | | | |
| positioning the loaded load bin within the transport container through the open end thereof, such that the unpalletized load is fully disposed within the container; and | | | | |
| engaging the movable wall of the barrier assembly with the | | | | |

14

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| unpalletized load and simultaneously repositioning the load bin and the transport container relative to each other such that the load bin again is disposed adjacent to the open end of the transport container, while the unpalletized load remains disposed within the transport container, wherein:<br><br>the loading assembly further includes a drive mechanism operable to move the load bin into the transport container during the step of positioning and to retract the load bin from the transport container during **the step of engaging**;<br><br>the step of positioning includes operating the drive mechanism so as to move the load bin into the transport container through the open end thereof until the unpalletized load is fully disposed within the transport container, while the transport container is maintained generally | | | | |

15

|  | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| stationary;<br><br>**the step of engaging** includes **engaging the barrier assembly with the stationary support structure**, to **lock the barrier assembly** adjacent to the open end of the transport container; and<br><br>**the step of engaging** further includes operating the drive mechanism so as to retract the load bin from the transport container, while the barrier assembly remains **engaged with the stationary support structure**, such that the unpalletized load remains within the transport container. |  |  |  |  |
| <u>'406 Patent, Claim 4:</u><br><br>A method as defined in claim 1, wherein the stationary support structure includes side supports disposed on opposing sides of the load bin. |  | See above, '406 Patent, Claim 1. | See above, '406 Patent, Claim 1. | See above, '406 Patent, Claim 1. |

16

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **'406 Patent, Claim 6:**<br><br>A method of loading a transport container, comprising:<br><br>providing loading assembly including a load bin, a barrier assembly having a horizontally movable wall disposed within the load bin, and a stationary support structure supporting the load bin and the barrier assembly, the support structure comprising frame members fixed relative to a ground support surface, wherein the barrier assembly is selectively positionable along the load bin, and wherein the load bin and the barrier assembly further cooperate to define a top opening for receiving an unpalletized load;<br><br>providing a transport container having an open end and a predetermined maximum loading capacity;<br><br>defining the predetermined | | | | |

17

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| maximum loading capacity by positioning the barrier assembly along the load bin, wherein the step of defining the predetermined maximum loading capacity further comprises positioning the barrier assembly relative to and within the load bin therealong to a volume configured to hold an unpalletized load of sufficient size to substantially fill the transport container to the predetermined maximum loading capacity in a single operation; <br><br> loading the load bin with an unpalletized load through the top opening to the predetermined maximum loading capacity defined by the barrier assembly and the load bin; <br><br> locating the transport container in alignment with the load bin adjacent the open end of the container; <br><br> positioning the loaded load bin within the transport container | | | | |

18

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| through the open end thereof, such that the unpalletized load is fully disposed within the container; and | | | | |
| **engaging** the movable wall of the barrier assembly with the unpalletized load and simultaneously repositioning the load bin and the transport container relative to each other such that the load bin again is disposed adjacent to the open end of the transport container, while the unpalletized load remains disposed within the transport container, wherein: | | "**the step of engaging**" -- see above, '406 Patent, Claim 1.<br><br>"**engage/engaging/ engaged**"-- see above, '382 Patent, Claim 11.<br><br>"**lock the barrier**"-- see above, '382 Patent, Claim 1.<br><br>"**engaging the barrier assembly with the stationary support structure**" -- see above, '382 Patent, Claim 11. | "**the step of engaging**" -- see above, '406 Patent, Claim 1.<br><br>"**engage/engaging/ engaged**"-- see above, '382 Patent, Claim 11.<br><br>"**lock the barrier**"-- see above, '382 Patent, Claim 1.<br><br>"**engaging the barrier assembly with the stationary support structure**" -- see above, '382 Patent, Claim 11. | "**the step of engaging**" -- see above, '382 Patent, Claims 1, 11.<br><br>"**engage/engaging/ engaged**"-- see above, '382 Patent Claims 1, 11.<br><br>"**lock the barrier**"-- see above, '382 Patent, Claim 1.<br><br>"**engaging the barrier assembly with the stationary support structure**" -- see above, '382 Patent, Claim 11. |
| the loading assembly further includes a drive mechanism operable to move the load bin into the transport container during the step of positioning of the loaded load bin and to retract the load bin from the transport container during **the step of engaging**; | | | | |
| the step of positioning the loaded load bin includes operating the | | | | |

19

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| drive mechanism so as to move the load bin into the transport container through the open end thereof until the unpalletized load is fully disposed within the transport container, while the transport container is maintained generally stationary;<br><br>**the step of engaging** includes **engaging the barrier assembly with the stationary support structure**, to **lock the barrier** assembly adjacent to the open end of the transport container; and<br><br>**the step of engaging** further includes operating the drive mechanism so as to retract the load bin from the transport container, while the barrier assembly remains **engaged** with the stationary support structure, such that the unpalletized load remains within the transport container. | | | | |

20

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **'406 Patent, Claim 9:**<br><br>A method as defined in claim 6, wherein the stationary support structure includes side supports disposed on opposing sides of the load bin. | | See above, '406 Patent, Claim 6. | See above, '406 Patent, Claim 6. | See above, '406 Patent, Claim 6. |
| **'575 Patent, Claim 2:**<br><br>A method of loading a transport container, comprising:<br><br>positioning a transport container having a predetermined load capacity and a loading assembly relative to one another such that the loading assembly is disposed adjacent to an open end of the container, the loading assembly including | **"while repositioning the load bin and the transport container relative to each other"** -- the load bin may move while the transport container is stationary, or vice versa, or both the load bin and the transport container may move. | N/A | N/A | Court adopts the parties' agreed proposed construction. |

21

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| a load bin including a floor and two side walls, wherein the bin is movable relative to the transport container between a retracted position, external of the transport container, and an inserted position, internal of the transport container, <br><br> a barrier assembly having a movable wall disposed within the load bin, the movable wall being movable relative to the load bin, wherein the load bin and the barrier assembly cooperate to define a volume configured to hold a bulk material load of sufficient size to substantially fill the transport container to the predetermined load capacity in a single operation, and wherein the load bin and the barrier assembly further cooperate to define a top opening for receiving the bulk material load, and | | **"lock the movable wall in a fixed position"** -- to position, hold or stop temporarily the movable wall. | | See above, '382 Patent, Claim 1. |

22

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| support structure supporting the load bin and the barrier assembly, wherein the support structure is stationary during loading assembly operation,

defining the predetermined maximum loading capacity by positioning the barrier assembly along the load bin, wherein the step of defining the predetermined maximum loading capacity further comprises positioning the barrier assembly relative to and within the load bin therealong to the volume configured to hold the bulk material load of sufficient size to substantially fill the transport container to the predetermined maximum capacity in the single operation;

loading the load bin with a bulk material load through the top opening;

positioning the load bin relative to the transport container through the open end thereof to the | | "engaging the barrier assembly with the stationary support structure"
-- see above, '382 Patent, Claim 11. | "engaging the barrier assembly with the stationary support structure"
-- see above, '382 Patent, Claim 11. | See above, '382 Patent, Claim 11. |

LA 129,250,485v6 12-28-10

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| inserted position such that the load bin and the unpalletized load are disposed within the container; and<br><br>**engaging the movable wall of the barrier assembly with the support structure** to **lock the movable wall in a fixed position** with respect to the bulk material load and with said wall being adjacent the open end of the transport container **while repositioning the load bin and the transport container relative to each other** from the inserted position with the load bin internal of the container to the retracted position external of the container such that the load bin again is disposed adjacent to the open end of the transport container, while the bulk material load remains disposed within the transport container. | | | | |

24

| | AGREED PROPOSED CONSTRUCTION | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION | COURT'S CONSTRUCTION |
|---|---|---|---|---|
| **'575 Patent, Claim 3:**<br><br>A method as defined in claim 2, wherein: the loading assembly further includes a drive mechanism operable to separate the load bin relative to the transport container during **the step of engaging**. | | "**the step of engaging**" -- see above, '406 Patent, Claim 1. | "**the step of engaging**" -- see above, '406 Patent, Claim 1. | "**the step of engaging**" -- see above, '382 Patent Claims 1, 11. |
| **'575 Patent, Claim 7:**<br><br>A method as defined in claim 2, wherein the support structure includes side supports disposed on opposing sides of the load bin. | | See above, '575 Patent, Claim 2. | See above, '575 Patent, Claim 2. | See above, '575 Patent, Claim 2. |

25